(No. 83-CC-1601– )

DIMMITT & OWENS FINANCIAL, INC., Claimant, *v.* THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES OF THE STATE OF ILLINOIS, Respondent.

*Order filed November 9, 1987.*

*Order filed April 13, 1989.*

*Opinion filed November 22, 1991.*

*Order filed June 29, 1992.*

MORRISSEY, ROBINSON & KABAT and STARK, REAGAN & FINNERTY, for Claimant.

ROLAND W. BURRIS, Attorney General (ROBERT J. SKLANBERG, STEVEN SCHMALL, and JANICE SCHAFFRICK, Assistant Attorneys General, of counsel), for Respondent.

## ORDER

PATCHETT, J.

This cause comes on for hearing upon the motion for summary judgment filed herein by the Claimant. The Court notes the following facts:

a. The Claimant filed his original complaint on February 3, 1983. To date, Respondent has never filed an Answer.

b. The Claimant subsequently filed a motion for judgment on the pleadings on the basis that no answer had been filed.

c. On May 16, 1986, this Court entered an order denying the motion for judgment on the pleadings and referring this matter to the Court of Claims commissioner for further proceedings. On April 10, 1986, the Claimant filed a motion for summary judgment and on August 1, 1986, Claimant filed a motion to enter order granting summary judgment. The Respondent did not file a response. Commissioner Ashman of this Court had given the Respondent until July 1, 1986, to respond to the motion for summary judgment. To date, the Respondent has not responded to the motion for summary judgment. Therefore, the Court finds as follows:

It appears that there is insufficient evidence before the Court to establish the amount of damages. Therefore, it is ordered that summary judgment is granted in

favor of the Claimant and against the Respondent on the issue of liability, and further, this case is remanded to the Court of Claims commissioner for the purposes of a hearing to determine damages.

## ORDER

PATCHETT, J.

This cause comes on for hearing upon the Respondent's motion to vacate the previous order of summary judgment granted by this Court. The Court notes that this claim was set by the commissioner of this Court for hearing on five different occasions. Claimant filed a motion for summary judgment in 1986. At the request of the Respondent, an extension of time was granted by this Court giving the Respondent additional time to file an objection to the motion for summary judgment. The Respondent filed nothing.

On August 1, 1986, the Claimant filed a motion asking the Court to rule. Over a year later, this Court somewhat reluctantly granted summary judgment on the issue of liability due to the absolute failure of the Respondent to plead. The cause was remanded to the commissioner of this Court for a trial on damages. Over five months later, the Respondent filed a motion to vacate the order of summary judgment.

While this Court feels that the Respondent may have had a meritorious defense, this Court cannot accept continuous, unexplained delays in pleadings and/or refusals to plead at all.

For the foregoing reasons, the motion to vacate the order of summary judgment on the issue of liability is hereby denied, and this cause is remanded to the

commissioner of this Court for a prompt hearing on the issue of damages.

## OPINION

PATCHETT, J.

This claim arose as a result of the termination of a contract between Youth Enrichment Services, Inc. (hereinafter referred to as "YES"), an Illinois not-for-profit corporation, and the Department of Children and Family Services (hereinafter referred to as "DCFS"). YES was formed in 1975, and was funded by various State agencies and voluntary contributions. The purpose of the corporation was to provide or secure specialized services and/or resources for those young people and their families who were difficult to serve using traditional methods. YES entered into a continuing series of contracts with DCFS to provide foster care services for minors who were in the custody of DCFS. The most recent of those contracts was to run from July 1, 1981, through June 30, 1982. YES had also entered into contracts with DCFS and other government agencies to provide child welfare services. DCFS had entered into its first contracts with YES during 1975. Pursuant to those contracts, DCFS audited YES every year thereafter.

On or about August 7, 1980, YES requested Dimmitt & Owens Financial, Inc. (hereinafter referred to as "D&O"), to engage in the business of purchasing accounts receivable. A written contract was entered into between D&O and YES. YES executed a Uniform Commercial Code Form UCC-1 which was duly filed by the Claimant on August 14, 1980. Therefore, beginning in August 1980, YES began discounting its receivables to D&O.

D&O would pay YES at the end of each month after the invoice for the month's services had been prepared. D&O would pay YES an amount in cash equal to 70% of the face value of the invoice. D&O would then submit the invoice to DCFS along with a statement indicating that D&O had purchased the account from YES. At the end of the following month, DCFS would pay the bill to D&O by the form of a warrant drawn on the State Treasurer.

From July 1, 1981, through December 31, 1981, YES performed services and submitted bills for services to DCFS, and was paid by DCFS. During January and February of 1982, YES provided services, and D&O subsequently billed DCFS. On February 23, 1982, YES received a warrant in payment of the January foster care invoice. A warrant was turned over to D&O pursuant to the customary procedure. During the morning of February 25, 1982, YES completed preparation of the invoice for foster services provided during February 1982 in the amount of $104,605.76. YES subsequently sold this account to D&O pursuant to the customary procedure, and in return received from D&O approximately $73,000.00.

On or about March 1, 1982, the office of the State Treasurer refused to honor the previously-issued warrant for January foster care services. In addition to these contracts, YES was selling to D&O, and billing the Respondent for, services pursuant to a specialized caretaker contract between YES and DCFS. It is alleged by the Claimant that payment for October through February of 1982 under the specialized caretaker contract also remains unpaid.

After the Respondent refused payment on the warrants as previously indicated, D&O filed suit against

the State of Illinois and others in the U.S. District Court for the Northern District of Illinois. On December 8, 1982, the State of Illinois was dismissed from said suit, and the Claimant was directed to the Court of Claims.

On February 3, 1983, D&O filed a claim with this Court. To date, no responsive pleading has ever been filed by the Respondent. Under the rules of the Court of Claims, the failure to file a response should be considered a general denial. Specifically, however, no affirmative matter was ever pled by the Respondent. On November 9, 1987, this Court granted summary judgment to the Claimant on the issue of liability. A motion to vacate that summary judgment was denied on April 13, 1989. The case was then remanded to a commissioner for a hearing on damages.

At the beginning of the trial on the issue of damages before a commissioner of this Court, the Respondent brought up a previously-conducted audit of YES by DCFS. They then sought successfully to introduce this audit into evidence. This was despite the fact that there had never been any pleadings, or any prior claim of a set-off, by the Respondent until the hearings began.

Therefore, the issues before this Court are as follows:

1. Whether the Respondent is even entitled to raise the issue of a set-off, having never pled the set-off, and having already had a summary judgment entered against them on the issue of liability.

2. Whether the Respondent, if allowed to plead a set-off, or attempt to prove a set-off, produced enough evidence at the hearing on this cause to establish such a set-off.

3. If the Respondent owes money to the Claimant, whether there are any additional awards of interest which can be granted by this Court pursuant to the request of the Claimant.

Summary judgment was granted on the issue of liability in favor of the Claimant due in large part to the total failure of the Respondent to respond with departmental reports necessary to determine the facts herein. To allow the department some two years after summary judgment to give information which should have been submitted before the summary judgment motion was granted, would frustrate the purpose of granting the summary judgment on the issue of liability.

Over a period of eight years, the Department totally and completely failed to file a pleading with this Court claiming set-off. Interestingly enough, the Department in its own brief, cites section 790.20 of the Court of Claims Regulations which provides as follows:

"Except as herein otherwise provided, pleadings and practice shall follow the Illinois Code of Civil Procedure ° ° ° and the revised Rules of the Supreme Court of Illinois ° ° °"

The Respondent then goes on to claim that this Court should deny this claim at this point because of that part of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.24—6) which provides in part that "° ° ° any recovery awarded by the court shall be subject to the right of set-off."

In numerous cases, this Court has indeed held that in granting a claim, we may take into consideration monies paid out by the Respondent to a claimant, regardless of whether related or not. A prime example is when this Court pays a claimant based on a tort claim, and the claimant has been on Public Aid. However, this Court has never held that the Respondent does not have

a duty to present the information to the Court regarding the amount of the set-off in a timely manner. In this case, they have simply failed to do so.

This Court is persuaded that a set-off must be pled in some manner prior to the determination of the issue of liability. Perhaps the Respondent might have been able to raise the issue of set-off in the motion to vacate the original grant of summary judgment, but they did not do so.

Therefore, this Court holds that the Respondent is precluded from raising the issue of set-off. Therefore, we need not reach the second issue of whether or not the Respondent would have carried its burden of proof at the hearing regarding their right to a set-off, or the amount of a set-off.

We are still left with a difficult question of how much damages should be. At the hearing before the commissioner of this court, Gerald Doles, regional manager for the Claimant, testified that there was due to the Claimant because of its factoring agreement with YES, the sum of $215,260.98. This figure appears to be uncontradicted, although the Claimant claims more than that in several of its pleadings prior to and subsequent to the hearing in question. In addition, the Claimant has made certain claims for prejudgment and post-judgment interest. This Court has consistently held that we are without jurisdiction or power to grant prejudgment or post-judgment interest. Therefore, those claims are denied.

In summary, this Court grants judgment in favor of the Claimant and against the Respondent for the sum of $215,260.98.

## ORDER

PATCHETT, J.

This claim comes before the Court on the Respondent's motion for reconsideration. The Court believes that a brief presentation of the facts is necessary.

This claim arose as a result of the termination of a contract between Youth Enrichment Services, Inc. (hereinafter referred to as "YES"), an Illinois not-for-profit corporation, and the Department of Children and Family Services (hereinafter referred to as "DCFS"). YES was formed in 1975, and was funded by various State agencies and voluntary contributions. The purpose of the corporation was to provide or secure specialized services, and/or resources, for those young people and their families who were difficult to serve using traditional methods. YES entered into a continuing series of contracts with DCFS to provide foster care services for minors who were in the custody of DCFS. The most recent of those contracts was to run from July 1, 1981, through June 30, 1982. YES had also entered into contracts with DCFS and other government agencies to provide child welfare services. DCFS had entered into the first contracts with YES during 1975. Pursuant to those contracts, DCFS audited YES every year thereafter.

On or about August 7, 1980, YES requested Dimmitt & Owens Financial, Inc. (hereinafter referred to as "D&O"), to engage in the business of purchasing accounts receivable. A written contract was entered into between D&O and YES. YES executed a Uniform Commercial Code Form UCC-1 which was duly filed by the Claimant on August 14, 1980. Therefore, beginning in August 1980, YES began discounting its receivables to D&O.

D&O would pay YES at the end of each month after the invoice for the month's services had been prepared. D&O would pay YES an amount in cash equal to 70% of the face value of the invoice. D&O would then submit the invoice to DCFS along with a statement indicating that D&O had purchased the account from YES. At the end of the following month, DCFS would pay D&O by the form of a warrant drawn on the State Treasurer.

From July 1, 1981, through December 31, 1981, YES performed services and submitted bills for services to DCFS, and was duly paid by DCFS. During January and February of 1982, YES provided services, and D&O subsequently billed DCFS. On February 23, 1982, YES received a warrant in payment of the January foster care invoice. A warrant was turned over to D&O pursuant to the customary procedure. During the morning of February 25, 1982, YES completed preparation of the invoice for foster services provided during February 1982 in the amount of $104,605.76. YES subsequently sold this account to D&O pursuant to the customary procedure, and in return received from D&O approximately $73,000.00. On or about March 1, 1982, the office of the State Treasurer refused to honor the previously-issued warrant for January foster care services.

In addition to these contracts, YES was selling to D&O, and billing the Respondent for, services pursuant to a specialized caretaker contract between YES and DCFS. It is alleged by the Claimant that payment for October through February of 1982 under the specialized caretaker contract also remains unpaid.

After the Respondent refused payment on the warrants as previously indicated, D&O filed suit against the State of Illinois and others in the U.S. District Court

for the Northern District of Illinois. On December 8, 1982, the State of Illinois was dismissed from said suit, and the Claimant was directed to the Court of Claims.

On February 3, 1983, D&O filed a claim with this Court. No affirmative matter was ever pled by the Respondent prior to November 9, 1987, when this Court granted summary judgment to the Claimant on the issue of liability. A motion to vacate that summary judgment was denied on April 13, 1989. The case was then remanded to a commissioner for a hearing on damages.

At the beginning of the trial on the issue of damages, the Respondent brought up a previously-conducted audit of YES by DCFS. They then sought successfully to introduce this audit into evidence. This was despite the fact that there had never been any pleadings, or any prior claim of set-off, by the Respondent until the hearing began.

Faced with this factual situation, this Court entered an opinion in November 1991 granting judgment in favor of the Claimant in the sum of $215,260.98. The Respondent has subsequently filed a motion to reconsider which claims that the Claimant had been made aware of the issue of set-off on at least one, and probably two, occasions prior to the entry of the order of this Court granting summary judgment on the issue of liability. In addition, the Respondent argues that this Court should be bound by the claim of set-off regardless of how or when that information comes to the Court. We reject this position.

Arguably, the Claimant may not have been surprised by the claim of set-off, but this Court was. The Respondent owes this Court a responsibility to present to it all defenses it is claiming, in order that the Court

may consider these prior to attempting to resolve the issues before it.

In addition, the Court is not convinced that we are bound to consider evidence of set-off produced by the Respondent at this late date, considering the total lack of responsive pleadings by the Respondent for the first eight years of this litigation. There may indeed be circumstances which arise in other cases in which the Respondent could bring up a claim of set-off subsequent to the initial determination of liability, but those potential fact situations are non-existent here.

For these reasons, we deny the motion for reconsideration and affirm our earlier opinion granting judgment to the Claimant in the sum of $215,260.98.